DISTRICT COURT OF THE UNITED STATES
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
MAGEEDAH AKHTAB, JEFREE ARIAS, NICOLA H. BLACK,
VINCENTA HUNTER, QUSQUQUZAH MUHAMMAD
and FRED ROHENA,

                  Plaintiffs,

        -against-

BCBG MAX AZRIA GROUP INC.,

                Defendant.
-------------------------------------------------------------------------X

*08CV3088* (AKH)(HP)*(ECF)*

**COMPLAINT AND
JURY DEMAND**

**PLAINTIFFS**, by their attorney, Paul S. McDonough, as and for their Complaint, respectfully allege as follows:

1.      At all times relevant hereto, Plaintiff MAGEEDAH AKHTAB was and is a resident of the State of New York, and maintained a residence at 776 Barbey St., Apt 2F, Brooklyn, NY 11207, in the County of Kings, State and City of New York.

2.      At all times relevant hereto, Plaintiff JEFREE ARIAS was and is a resident of the State of New York, and maintained a residence at 1866 Ocean Avenue, Brooklyn, New York, in the County of Kings, State and City of New York.

3.      At all times relevant hereto, Plaintiff NICOLA H. BLACK was and is a resident of the State of New Jersey, and maintained a residence at 525 Central Avenue, Westfield, New Jersey.

4.      At all times relevant hereto, Plaintiff VINCENTA HUNTER was and is a resident of the State of New York, and maintained a residence at 66 50th Street, Brooklyn, New York, , in

1

the County of Kings, State and City of New York.

5.    At all times relevant hereto, Plaintiff QUSQUQUZAH MUHAMMAD was and is a resident of the State of New York, and maintained a residence at 771 Greene Avenue, Brooklyn, New York, in the County of Kings, State and City of New York.

6.    At all times relevant hereto, Plaintiff FRED ROHENA was and is a resident of the State of New York, and maintained a residence at 631 Bushwick Avenue, Brooklyn, New York, in the County of Kings, State and City of New York.

7.    At all times relevant hereto, defendant BCBG MAX AZRIA GROUP INC.. (hereinafter "BCBG") was and is a foreign company duly authorized to do business in New York State and maintains offices at various locations in the Southern District of New York including one located at 168 5th Avenue in New York City where the predominatinating incidents which give rise to this Complaint occurred.

## JURISDICTION AND VENUE

8.    This action is brought pursuant to 42 U. S.C. §§ 1981, 1983 and 1988, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et. seq., 28 U.S.C. §1331 and 1343, and the First and Fourteenth Amendments to the United States Constitution.  State law claims are brought under the New York State Constitution Article 1, §8, and the New York State Human Rights Law, Executive Law §296, et seq. Claims under the New York City Human Rights Law are brought under the New York City Administrative Code §8-107. This court has pendent jurisdiction for the New York State and City law claims. Venue is based on 28 U.S.C. §1391 and

§1392. Defendant maintains offices and does business in the Southern District of New York and,

as set forth more fully infra, many of the incidents which form the gravamen of this Complaint

occurred within the area comprising the Southern District of New York.

## STANDING

9.      Defendant employed more than 15 persons at all times.

10.     On or about May 31, 2007, the Plaintiffs filed charges with the U.S. Equal

Employment Opportunity Commission, (hereinafter, "EEOC"), alleging certain violations of

Title VII including discrimination based on race, national origin and retaliation.

11.     The Plaintiffs received "Right to Sue" letters from U.S. Equal Employment

Opportunity Commission on or about January 15, 2008.

12.     Prior to the filing of this Complaint, a copy has been duly served on the

Corporation Counsel of the City of New York and the New York City Commission on Human

Rights

## FACTS

13.      Plaintiff, Plaintiff MAGEEDAH AKHTAB ("MAGEEDAH" or

"AKHTAB"),began working at the BCBG retail store when it opened on or about June 30, 2006

after approximately fifteen years of retail experience. During her employment at the store she and

others were continually faced with racially hostile comments and retaliatory actions which

resulted in such extreme emotional distress that she sought and received medical attention.

14.     One example of the type of racially hostile environment that Ms. Akhtab  was

exposed to occurred when the Store Manager found a black woman who he thought might have been stealing. He told Ms. Akhtab that he spoke to her using the "N" word. As an African American, Ms. Akhtab was shocked that this Caucasian man would use that word to her and would repeat it to Ms. Akhtab . When she complained to Mary Nugent, the General Manager, about this incident, things got worse. The Store Manager started complaining about Ms. Akhtab and physically bumping into her when he passed her in order to intimidate her. Other employees noticed this and saw that there was room for him to pass without bumping Ms. Akhtab .

15.    Ms. Nugent has also used racially hostile terms in the workplace, telling African Americans that she would "crack the whip" on them and referred to the store by saying  "this is not your neighborhood, this is not some ghetto." At other times she would refer to the store as a "ghetto", referring to the diverse racial makeup of its stores in contrast to other BCBG stores. When Ms. Akhtab attempted to complain, Ms. Nugent's boss came to the store and threatened to fire Ms. Akhtab.

16.    In mid April of 2007, the company was having a special event that had the possibility to generate a significant amount of income for the sales associates chosen to work it. The top sale associates from other BCBG stores were chosen to work this event. As one of the top performers at her store, Ms. Akhtab should have been chosen for this event, but was not. It was only when she found out about it by happenstance and protested, that she was allowed to attend.

17.    In late 2007, Ms. Akhtab had a situation where she was dealing with both an ill family member and an ill friend. She spoke to management about her need to be late on occasion and was led to believe that, as long as she kept management informed, there would be no

4

repercussions. Several months following the resolution of the issues, Ms. Akhtab happened to be late one day. She was written up for all latenesses in the proceeding months and given a written warning threatening her with termination. Upon information and belief a Caucasian employee was given a written warning for lateness that did not include any threats of termination.

18.    Plaintiff NICOLA BLACK ("NICOLA" or "BLACK") was employed as a Sales Associate at the BCBG MaxAzaria store at 168 5th Avenue in New York City. When some clients came to the store to shop for a dress for a black tie event, the store's general manager, Mary Nugent, approached Ms. Black and said that she should keep an eye on them because they were Jamaican and she has never met a Jamaican that does not steal. When Ms. Black told Ms. Nugent that she, Ms. Black,  was Jamaican, Ms. Nugent replied "you are different, not you." Ms. Black  was deeply offended and thought of whether Ms. Nugent would have her sister, who is a nurse, watched, merely because she is Jamaican. Ms. Black found this incident extremely distressful and an example of the racially hostile environment at BCBG.

19.    Ms. Black heard Mary Nugent referred to the store as a ghetto, presumably because of its racially diverse make up and permitted the Store Manager, John, to attempt to physically intimidate Ms. Akhtab by bumping in to her when there was plenty of room to pass after she complained about his use of the "N" word. Ms. Black witnessed such an incident. When Ms. Black decided she could no longer tolerate the racially hostile environment and sought a transfer to a store which would be more convenient for her commute, she was refused. She decided to leave the intolerable environment.

20.    Plaintiff JEFREE ARIAS ("JEFREE or ARIAS")was employed as a stock worker at the BCBG MaxAzaria store at 168 5th Avenue in New York City. Mr. Arias is an Hispanic American

of Dominican heritage.

21.    While he was working there, General Manager Mary Nugent sent for him because she locked her office and did not have the key. She wanted Mr. Arias to pick the lock and told another employee that "all of them know how to do it." It was clear to Mr. Arias that she was referring to his skin color and Dominican heritage. Mr. Arias felt he was being looked down on, not because of anything he did, but because of his race and nationality.

22.    On another occasion, Mr. Arias learned that when some items were missing from the store, Ms. Nugent suggested that Mr. Arias should be suspected because half of his family was incarcerated. Mr. Arias never told Ms. Nugent that and it was untrue. He was deeply offended and joined with fellow employees in complaining about the racially hostile environment at the store.

23.    On Saturday, April 21, 2007, Mr. Arias was terminated, allegedly for lateness. However other employees who were late, but did not complain about the racially hostile environment were not disciplined.

24.    Plaintiff QUSQUQUZAH MUHAMMAD ("QUSQUQUZAH" or "MUHAMMAD") employed as a Sales Associate at the BCBG MaxAzaria store at 168 5th Avenue in New York City, and had been the top performing sales associate at that store.  Ms. Muhammad became aware of racially demeaning remarks made by the store's managers such as the store's general manager, Mary Nugent, who referred to the store as a ghetto, and the store manager, John.

25.    During a coat sales contest   Ms. Muhammad stated to Ms. Nugent that the contest should be easy for her,   Ms. Muhammad would call a few friends and people she knew to do

some coat shopping. Ms. Nugent'sary's response was "You know people who can afford

BCBG?"   Ms. Muhammad's  response was "How high end do you think BCBG is?" The clear

implication of what Ms. Nugent said was how could   Ms. Muhammad, as an African American,

know people who could afford this clothing.   Ms. Muhammad  was offended and joined with

other employees in complaining about the racially hostile environment a BCBG.

      26.    Plaintiff Muhammad sought a transfer from the store where she had been working

in the hope of finding a less racially hostile environment. Ms. Muhammad knew that her history

as a top sales performer made her an asset to Defendant.  Ms. Muhammad was offered a transfer

to the Madison Avenue store where she was placed on the second floor. She quickly learned that

there was no traffic on the second floor and that it was impossible for a sales person to be

successful there, and that her predecessors had been unsuccessful there. Her income declined to

the point where she was forced to cancel certain insurance which she had. She requested a further

transfer to one of several open positions where sales representatives could be successful, but was

denied in retaliation for her complaints about racial harassment in the workplace. She was forced

to leave BCBG to earn a living. Ms. Muhammad left BCBG on February 16, 2008.

      27.    Plaintiff FRED ROHENA ("FRED" or "ROHENA") was employed as an

Assistant Sales Manager at the BCBG MaxAzaria store at 168 5th Avenue in New York City. In

January of 2007, Mr. Rohena noticed that a salesperson, Plaintiff Black, seemed very upset.

When Mr. Rohena  asked her what was the matter, Nicola told him that she had been standing

next to the store manager, Mary Nugent, when a Jamaican client came in. Ms. Nugent said to

Nicola that she had never met a Jamaican who does not steal. Nicola informed Ms. Nugent  that

she was Jamaican and Ms. Nugent said that she did not mean her. When Nicola said she was still

upset, Mr. Rohena suggested she contact Human Resources.

28.    On another occasion when Mr. Rohena was discussing theft from the store with Ms. Nugent, he asked her if she had any idea of who it might be, she suggested Jefree Arias, a stock worker of Dominican descent.  When he asked why, she said that it was because half of his family was in jail. Later that day, Mr. Rohena  met Jefree in the bank and asked him if he ever told Ms. Nugent that half his family was in jail and he said no. When Mr. Rohena told him what she said he got very upset.

29.    Following these events, and learning of other racially hostile incidents at the store, Mr. Rohena decided to complain to Human Resources about the racially hostile environment there. Nothing happened for approximately one and one half weeks; then he was called into Ms. Nugent's office and given a written final warning. In the seven months that he had been at the store, Mr. Rohena had never received a verbal correction, a written warning or a suspension, all of which should come before a final warning. Further, the reasons given in the final warning were fabrications. For example, he was criticized that his Personal Sales were below the team average. Due to the makeup of the store, he was expected to spend a lot of time supervising junior people. Since Mr. Rohena  was doing that, he could not spend time making his own sales. Mr. Rohena realized that he was going to be forced out of BCBG for complaining of racism and took steps to find another position.

30.    Plaintiff VINCENTA HUNTER ("VINCENTA" or "HUNTER") was employed as an Assistant Sales Manager at the BCBG MaxAzaria store at 168 5th Avenue in New York City. The store's general manager, Mary Nugent, sent Ms. Hunter to get Jefree Arias, then a stock worker of Dominican descent to pick a lock when a door was locked and she couldn't find

8

a key. When I asked why get Jefree, she replied, I know he knows how to pick locks. As an African American, Ms. Hunter found this racial stereotyping to be offensive and upsetting.

31.    On or about March 30, 2007, a Human Resources Consultant, to the company, Theresa Ritter, held a diversity meeting at the store and Ms. Hunter, among others, explained the racially hostile environment at the store. Ms. Nugent was not at that meeting.

32.    On or about April 11, 2007, Ms. Hunter was involved in a minor incident involving correcting a stock associate for not changing light bulbs that were out at the store's opening, even though he had been told to do so at a meeting shortly before. When he denied knowing about it she escalated it to Mary Nugent who brought both of them in to explain the situation. When the stock associate still denied knowledge of his responsibility to check the lights at opening, Ms. Hunter got angry and left the meeting. She came back and apologized to Ms Nugent who told not to worry about it and that in fact she had reprimanded the stock worker since the meeting agenda clearly reflected the lighting issue was to be covered. ___

33.    The day following the incident, as part of a pre planned meeting, the Regional Manager Marion-Lyn Riordan and the District Manager, Janice McCormick, came to the store. In the afternoon, Ms. Hunter was asked to meet with them to explain what had happened, which she did. Following this, the stock associate with whom she had the disagreement told me that he was getting a lot of pressure from management to write a letter about the incident, and was told that he was warned that it should be confidential or there would be consequences. He was even being called at home. He said other stock associates were being asked to write letters as well, but they refused. Everyone considered the issue to be closed.

33.    Shortly thereafter Ms. Ritter, the Human resources consultant, met with Ms.

9

Nugent and informed her of the complaints of the store personnel including Ms Hunter. This was done with the consent of the people who attended the meeting who hoped for a change.

34.     On Monday, April 23, 2007, Ms. Hunter was terminated, allegedly for the minor incident involving the light bulb which she had been told not to worry about. Clearly her termination was in retaliation for explaining and complaining about the racially hostile environment at BCBG.

35.     Defendant created and allowed to exist a workplace permeated with discriminatory intimidation, ridicule, and insult, as well as permitting retaliation for complaints of discriminatory conduct that was sufficiently severe or pervasive so as to alter the conditions of plaintiffs' employment.

36.     This treatment was extremely humiliating and embarrassing.

37.     The above mentioned list of discriminatory acts perpetrated against the Plaintiffs as a result of their race and national origin is not exhaustive, and it demonstrates an existing established company policy that permits supervisors to discriminate against individuals of a different race and national origin.

38.     Plaintiffs made numerous complaints to human resources, both locally and at the corporate headquarters in California regarding the way they were being treated. Nothing, however, was done to rectify the situation.

39.     Upon information and belief, each enumerated act separately and collectively was taken to discriminate against the Plaintiffs in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law and the New York City Human Rights Law.

40.     Plaintiffs are all members of protected classes under Title VII of the Civil Rights

Act of 1964, the New York State Human Rights Law and the New York City Human Rights

Law on the basis of their race and or national origins. Plaintiffs MAGEEDAH AKHTAB,

NICOLA H. BLACK, VINCENTA HUNTER, and QUSQUQUZAH MUHAMMAD, are

African American. Plaintiffs JEFREE ARIAS and FRED ROHENA are Hispanic.


## AS AND FOR A FIRST CAUSE OF ACTION

41.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

"54" with the same force and effect as if set forth more fully herein.

42.    Plaintiff MAGEEDAH AKHTAB has been and continues to be the subject of

discriminatory and retaliatory treatment at Defendant's workplace motivated by her race and her

complaints of discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964.

43.    The Plaintiff performed her responsibilities as a sales associate in a professional

manner and has proven to be a qualified employee.

44.    Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00)

Dollars.

## AS AND FOR A SECOND CAUSE OF ACTION

45.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

"54" with the same force and effect as if set forth more fully herein.

46.    Plaintiff NICOLA BLACK has been the subject of discriminatory and retaliatory

treatment at Defendant's workplace motivated by her race and her complaints of discriminatory

conduct in violation of Title VII of the Civil Rights Act of 1964.

47.    The Plaintiff performed her responsibilities as a sales associate in a professional

manner and has proven to be a qualified employee.

48.    Plaintiff  has been damaged in the sum of ONE MILLION ($1,000,000.00)

Dollars.

## AS AND FOR A THIRD CAUSE OF ACTION

49.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

"54" with the same force and effect as if set forth more fully herein.

50.    Plaintiff VINCENTA HUNTER has been the subject of discriminatory and

retaliatory treatment at Defendant's workplace motivated by her race and her complaints of

discriminatory conduct in violation of Title  VII of the Civil Rights Act of 1964.

51.    The Plaintiff  performed her responsibilities as aa Assistant Store Manager in a

professional manner and has proven to be a qualified employee.

52.    Plaintiff  has been damaged in the sum of ONE MILLION ($1,000,000.00)

Dollars.

## AS AND FOR A FOURTH CAUSE OF ACTION

53.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through

"54" with the same force and effect as if set forth more fully herein.

54.    Plaintiff QUSQUQUZAH MUHAMMAD, has been the subject of discriminatory

and retaliatory treatment at Defendant's workplace motivated by her race and her complaints of

discriminatory conduct in violation of Title  VII of the Civil Rights Act of 1964.

55.    The Plaintiff  performed her responsibilities as a sales associate in a professional

manner and has proven to be a qualified employee.

56.    Plaintiff  has been damaged in the sum of ONE MILLION ($1,000,000.00)

Dollars.

## AS AND FOR A FIFTH CAUSE OF ACTION

57.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

58.     Plaintiff JEFREE ARIAS, has been the subject of discriminatory and retaliatory treatment at Defendant's workplace motivated by his race and his complaints of discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964.

59.     The Plaintiff performed his responsibilities as a stock worker in a professional manner and has proven to be a qualified employee.

60.     Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A SIXTH CAUSE OF ACTION

61.     Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

62.     Plaintiff FRED ROHENA, has been the subject of discriminatory and retaliatory treatment at Defendant's workplace motivated by his race and his complaints of discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964.

63.     The Plaintiff performed his responsibilities as a sales associate in a professional manner and has proven to be a qualified employee.

64.     Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A SEVENTH CAUSE OF ACTION

13

65.     MAGEEDAH AKHTAB repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

66.     MAGEEDAH AKHTAB is a member of a protected class under New York Executive Law Section 296 on the basis of her race and / or national origin.

66.     The defendant knew or had reason to believe that Plaintiff MAGEEDAH AKHTAB would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff MAGEEDAH AKHTAB.

67.     Plaintiff MAGEEDAH AKHTAB has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

68.     Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of N.Y. Exec. Law sec. 296.

69.     As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.


**AS AND FOR AN EIGHTH CAUSE OF ACTION**

70.     NICOLA H. BLACK repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

71.     NICOLA H. BLACK is a member of a protected class under New York Executive Law Section 296 on the basis of her race and / or national origin.

72.     The defendant knew or had reason to believe that Plaintiff NICOLA H. BLACK would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff NICOLA H. BLACK.

14

73.    Plaintiff NICOLA H. BLACK has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

74.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of N.Y. Exec. Law sec. 296.

75.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.


**AS AND FOR A NINTH CAUSE OF ACTION**

76.    VINCENTA HUNTER repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

77.    VINCENTA HUNTER is a member of a protected class under New York Executive Law Section 296 on the basis of her race and / or national origin.

78.    The defendant knew or had reason to believe that Plaintiff VINCENTA HUNTER would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff VINCENTA HUNTER.

79.    Plaintiff VINCENTA HUNTER has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

80.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of N.Y. Exec. Law sec. 296.

81.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A TENTH CAUSE OF ACTION

82.    QUSQUQUZAH MUHAMMAD repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

83.    QUSQUQUZAH MUHAMMAD is a member of a protected class under New York Executive Law Section 296 on the basis of her race and / or national origin.

84.    The defendant knew or had reason to believe that Plaintiff QUSQUQUZAH MUHAMMAD would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff QUSQUQUZAH MUHAMMAD.

85.    Plaintiff QUSQUQUZAH MUHAMMAD has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

86.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of N.Y. Exec. Law sec. 296.

87.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A ELEVENTH CAUSE OF ACTION

88.    JEFREE ARIAS  repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

89.    JEFREE ARIAS  is a member of a protected class under New York Executive Law Section 296 on the basis of his race and / or national origin.

90.    The defendant knew or had reason to believe that Plaintiff JEFREE ARIAS would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's

conduct towards Plaintiff JEFREE ARIAS .

91.    Plaintiff JEFREE ARIAS has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

92.    Defendants have discriminated, harassed and retaliated against Plaintiff based on his race and / or national origin in violation of N.Y. Exec. Law sec. 296.

93.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars


## AS AND FOR A TWELFTH CAUSE OF ACTION

94.    FRED ROHENA  repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

95.    FRED ROHENA  is a member of a protected class under New York Executive Law Section 296 on the basis of his race and / or national origin.

96.    The defendant knew or had reason to believe that Plaintiff FRED ROHENA would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff FRED ROHENA  .

97.    Plaintiff FRED ROHENA has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

98.    Defendants have discriminated, harassed and retaliated against Plaintiff based on his race and / or national origin in violation of N.Y. Exec. Law sec. 296.

99.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

17

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

100.     MAGEEDAH AKHTAB repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

101.     MAGEEDAH AKHTAB  is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

102.     The defendant knew or had reason to believe that Plaintiff MAGEEDAH AKHTAB   would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff MAGEEDAH AKHTAB  .

103.     Plaintiff  MAGEEDAH AKHTAB  has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

104.     Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

105.     As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION

106.     NICOLA H. BLACK repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

107.     NICOLA H. BLACK is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

108.    The defendant knew or had reason to believe that Plaintiff  NICOLA H. BLACK would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff  NICOLA H. BLACK  .

109.    Plaintiff  NICOLA H. BLACK has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

110.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

111.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars

## AS AND FOR A FIFTEENTH CAUSE OF ACTION

112.    VINCENTA HUNTER  repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

113.    VINCENTA HUNTER is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

114.    The defendant knew or had reason to believe that Plaintiff VINCENTA HUNTER would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff VINCENTA HUNTER  .

115.    Plaintiff  VINCENTA HUNTER has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

116.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

117.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION

118.    QUSQUQUZAH MUHAMMAD repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

119.    QUSQUQUZAH MUHAMMAD is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

120.    The defendant knew or had reason to believe that Plaintiff  QUSQUQUZAH MUHAMMAD   would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff  QUSQUQUZAH MUHAMMAD  .

121.    Plaintiff  QUSQUQUZAH MUHAMMAD   has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

122.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

123.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

124.    JEFREE ARIAS repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

125.    JEFREE ARIAS is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

126.    The defendant knew or had reason to believe that Plaintiff  JEFREE ARIAS would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff  JEFREE ARIAS   .

127.    Plaintiff  JEFREE ARIAS  has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

128.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

129.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

## AS AND FOR A EIGHTEENTH CAUSE OF ACTION

130.    FRED ROHENA  repeats and realleges the allegations contained in paragraphs "1" through "54" with the same force and effect as if set forth more fully herein.

131.    FRED ROHENA  is a member of a protected class under The New York City Human Rights Law, New York City Administrative Code §8-107 on the basis of her race and / or national origin.

21

132.    The defendant knew or had reason to believe that Plaintiff  FRED ROHENA would suffer extreme emotional distress, anxiety and humiliation as a result of the defendant's conduct towards Plaintiff  FRED ROHENA    .

133.    Plaintiff  FRED ROHENA has suffered severe emotional distress, anxiety and humiliation, as well as loss of income, as a result of the conduct of defendants.

134.    Defendants have discriminated, harassed and retaliated against Plaintiff based on her race and / or national origin in violation of The New York City Human Rights Law, New York City Administrative Code §8-107.

135.    As a result of the defendants' conduct, Plaintiff has been damaged in the sum of ONE MILLION ($1,000,000.00) Dollars.

### JURY DEMAND

136.    Plaintiff demands a jury trial of this action.

**WHEREFORE**, Plaintiff demands judgement as follows:

a)      On the First Cause of Action, in the sum of One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

b)      On the Second Cause of Action, in the sum of One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00)

Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

c)      On the Third Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

d)      On the Fourth Cause of Action One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

e)      On the Fifth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; ; and

f)      On the Sixth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; ; and

g)      On the Seventh Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

h)      On the Eighth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

i)      On the Ninth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

j)      On the Tenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

j)      On the Eleventh Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

j)      On the Twelfth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with costs of this action and such other and further relief as this Court deems just and proper; and

f)      On the Thirteenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and

proper; and

f)    On the Fourteenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

f)    On the Fifteenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

f)    On the Sixteenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

f)    On the Seventeenth Cause of Action, One Million($1,000,000.00) Dollars, together with front pay, back wages, and other compensatory damages, together with interest, along with punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's fees and costs of this action along with such other and further relief as this Court deems just and proper; and

f)      On the Eighteenth Cause of Action, One Million($1,000,000.00) Dollars, together

with front pay, back wages, and other compensatory damages, together with interest, along with

punitive damages in the sum of Five Million ($5,000,000.00) Dollars) and reasonable Attorney's

fees and costs of this action along with such other and further relief as this Court deems just and

proper

Dated: New York, New York
     March 18, 2008

PAUL S. McDONOUGH
50 Broad Street
Suite 1800
New York, NY 10004
(212) 509-2050
McDonoughLaw@Gmail.com
PSM1796
Attorney for Plaintiff

By_____
PAUL S. McDONOUGH
(PSM 1796)

26